UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SAMUEL LINK DILLER,            §
      *Plaintiff*,            §
              §
vs.            §    CIVIL ACTION NO. H-05-3693
              §
SUNOCO PARTNERS, L.L.C.,            §
      *Defendant*.            §

## MEMORANDUM AND RECOMMENDATION

This Fair Labor Standards Act ("FLSA") is before the court on defendant Sunoco Partners L.L.C.'s motion for summary judgment (Dkt. 58).[1]  Having considered the parties' submissions,[2] the record, and the law, the court concludes that defendant's motion should be denied.

## I.    BACKGROUND FACTS

Plaintiff Samuel Diller began work for Sunoco in February or March 2004 as a "control center supervisor."  Despite the title, Diller did not supervise other employees.  There is no dispute that Diller was paid a salary, and was not paid overtime.

---

[1]    The district court referred this case to this magistrate judge for pretrial management (Dkt. 23).

[2]    Including the defendant's most recent filing on August 8, 2007 (Dkt. 73).  That response also moves to strike portions of Diller's affidavit as hearsay, which is denied.

In January 2005, Sunoco changed the title of the control center supervisor position to "pipeline controller," and changed the pay scheme to pay straight time for hours worked in excess of 40 hours per week and on holidays.  At this time, Diller was a pipeline controller grade III.  Also in January 2005, Sunoco reclassified as "non-exempt" the pipeline controller grade II trainee position, but continued to classify the positions of pipeline controller grades III-VI as exempt.  Sunoco promoted Diller to pipeline controller grade IV in early February, 2005, and Diller quit three weeks later.  There is no dispute that Sunoco classified Diller as "exempt" from the overtime provisions of the FLSA at all times.

Diller sued Sunoco in October 2005 alleging that Sunoco violated the FLSA by failing to pay him one and one-half times his regular hourly rate for overtime work.[3]  Sunoco asserts that Diller is not entitled to overtime pay because he was exempt from the protection of the FLSA pursuant to the "administrative exemption" of 29 U.S.C. § 213(a)(1).

## II.   LEGAL STANDARDS

### A.   Summary Judgment

---

[3]      Diller initially filed this lawsuit as a collective action on behalf of other similarly situated individuals.  All other named plaintiffs and opt-in plaintiffs have either dismissed their claims or been ordered to arbitration, leaving Diller as the only plaintiff in this action.

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002).

A summary judgment movant who bears the burden of proof on a claim must establish each element of the claim as a matter of law. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the evidence presented to rebut the summary judgment is not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the nonmoving party. *Id.* at 255; *Hotard v. State Farm Fire & Cas. Co.,* 286 F.3d 814, 817 (5th Cir. 2002).

**B.**   **Fair Labor Standards Act**

The FLSA provides that employers must pay covered employees extra compensation of at least one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week.  29 U.S.C. § 207(a)(1).  The reach of the FLSA is broad, but not unlimited.  *Cleveland v. City of Elmendorf*, 388 F.3d 522, 526 (5th Cir. 2004).  Certain employees are exempt from FLSA coverage.  The employer bears the burden to prove that an employee is exempt, and "exemptions are to be narrowly construed against the employer."  *Id.*; *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 584 (5th Cir. 2006).

One exemption to FLSA overtime requirements covers employees occupying "bona fide executive, administrative, or professional" positions.   29 U.S.C. § 213(a)(1).  That same section authorizes the Secretary of Labor to issue regulations defining the scope of these exempt positions.  The administrative exemption is now codified at 29 C.F.R. § 541.200 *et seq.*  In order to prevail on its affirmative defense under the administrative exemption, a defendant must establish each of the following elements:

(1)    the employee earns a salary of at least $455 per week;

(2)    the employee's primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer; and,

(3)     the employee's primary duty includes the exercise of discretion and

independent judgment with respect to matters of significance.

29 C.F.R. § 541.200.

Generally, a duty is "primary" if it involves over 50% of an employee's work

time, but the 50% rule is flexible and requires consideration of the importance of the

employee's managerial duties compared with other duties, the frequency of the

employee's exercise of discretion, the employee's freedom from supervision, and

comparative wages. *Lott v. Howard Wilson Chrysler Plymouth*, 203 F.3d 326, 331

(5th Cir. 2000); *Tyler v. Union Oil Co. of Ca.*, 304 F.3d 379, 404 (5th Cir. 2002).  It

is the employee's actual day-to-day activities that are relevant to determining exempt

status under FLSA, not the labels placed on the duties by employer or employee.

*Kohl v. The Woodlands Fire Dep't,* 440 F. Supp. 2d 626, 634 (S.D. Tex. 2006);

*Schaefer v. Indiana Michigan Power Co.*, 358 F.3d 394, 400-01 (6th Cir. 2004).

Guidance on the types of work that are "directly related to the management or general

business operations of the employer" is provided in 29 C.F.R. § 541.201:[4]

---

[4]     This regulation on the administrative exemption was issued by the Department of Labor in
2004. *See* 69 Fed. Reg. 22260 (Apr. 23, 2004).  Both parties appear to assume that the new
regulation is controlling here, even though the liability period may extend back before it was
issued. Because the new regulation was primarily intended to clarify rather than to alter the
scope of the exemption, the court will likewise assume its applicability here. *See Kohl v. The
Woodlands Fire Dep't,* 440 F. Supp. 2d 626, 633 n.2 (S.D. Tex. 2006).

(a) To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers.  The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee.  To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.

(b)  Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.  Some of these activities may be performed by employees who also would qualify for another exemption.

(c)  An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers.   Thus, for example, employees acting as advisors or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt.

## III.  ANALYSIS

Diller contends that Sunoco has failed to meet its summary judgment burden as to the second and third elements of the administrative exemption to the FLSA.

### 1.   Was Diller's Primary Duty Directly Related to Management or General Business Operations of Sunoco?

It is not seriously disputed that the primary duty of a pipeline controller is to operate the pipeline systems, including, among other things, the starting and stopping of pumps, closing pump valves, changing pipeline products, and monitoring pressures and changes in pipeline contents and controls (including changes in the temperature). Controllers perform these functions by monitoring their computer network console and the system known as Supervisory Control and Data Acquisition (SCADA).[5]

The parties vigorously dispute how that primary duty should be characterized. As Sunoco contends, pipeline controllers may be vital to Sunoco's business of "gathering and transporting crude oil and other products from one location to another,"[6] as no doubt are numerous other employees that keep the pipeline up and running. But that does not necessarily mean that pipeline controllers perform work of an *administrative* nature as contemplated by DOL regulations.

As the Fifth Circuit has observed, DOL regulations on the administrative exemption draw a distinction "between those employees whose primary duty is administering the business affairs of the enterprise from those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market." *Dalheim v. KDFW-TV,* 918 F.2d 1220, 1230

---

[5]        Sunoco's motion, at 4.

[6]        *Id.* at 16.

(5th Cir. 1990).  In other words, "the question is whether the types of activities the employee is engaged in relate to the administrative operations of the business as distinguished from production or sales."  *Kohl,* 440 F. Supp. 2d at 634-35.  The typical examples of administrative positions listed in 29 C.F.R. § 541.201(b) reinforce the idea that this exemption covers service-type positions ancillary to the company's *raison d'etre*: "tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer network, internet, and database administration; legal and regulatory compliance; and similar activities."  While many of these positions may be vital if not indispensable to a well-run business, they are not producing or selling the company's product or service.  Rather, in the words of the regulation, they are "*assisting* with the running or servicing of the business."  29 C.F.R. § 541.201(a) (emphasis supplied).

Sunoco is in the business of transporting crude products through its pipeline systems.  Sunoco maintains, and Diller does not dispute, that Diller's primary duty as a pipeline controller was to monitor, inspect, and control the flow of oil through the pipeline systems.  His services were not ancillary to Sunoco's pipeline business; they were central to that business.  Therefore, it is difficult to understand how Diller's

job, directly controlling the movement of crude oil and other products from one location to another, could be regarded as administrative in nature. To the contrary, Diller's position appears more closely analogous to a non-exempt worker on a manufacturing production line. *See e.g., Barth v. Wolf/Creek Nuclear Operating Corp.,* 125 F. Supp. 2d 437, 440 (D. Kan. 2000) (monitoring nuclear power plant and managing system's performance are not exempt administrative duties); *Gianni v. Standard Oil Co.,* 130 F. Supp. 740, 742, 746-47 (N.D. Ind. 1955) (oil refinery inspector in charge of "maintenance, safety and operational efficiency" of facilities held not exempt); *cf. Renfro v. Indiana Michigan Power Co.,* 370 F.3d 512, 518 (6th Cir. 2004) (power company planners responsible for planning maintenance procedures and advising management about necessary permits held exempt as administrative employees).

At the very least, Diller has created a genuine issue of fact whether his primary job duty is directly related to management or general business operations, as required by the second element of the FLSA administrative exemption.

### 2. Did Diller's Primary Duty Involve the Exercise of Discretion and Independent Judgment in Respect to Matters of Significance?

Sunoco's motion emphasizes the importance of the pipeline controller position to its business, as well as the fact that a controller mistake could cost Sunoco a lot of

money and possibly harm the public and environment.[7]  However, this fact does not answer the question of whether Diller exercised discretion and independent judgment with respect to matters of significance.  *See Dalheim,* 918 F.2d at 1231 ("[T]he fact that a worker's poor performance may have a  significant profit-and-loss impact is not enough to make that worker an exempt administrator.").  To answer that question, 29 C.F.R. § 541.202(b) instructs that the following non-exhaustive list of factors should be considered:

> (a)   whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices;

> (b)   whether the employee carries out major assignments in conducting the operations of the business;

> (c)   whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business;

> (d)   whether the employee has authority to commit the employer in matters that have significant financial impact;

> (e)   whether the employee has authority to waive or deviate from established policies and procedures without prior approval;

> (f)   whether the employee has authority to negotiate and bind the company on significant matters;

---

[7]     Sunoco's Motion, at 18-19.

(g)    whether the employee provides consultation or expert advice to management;

(h)    whether the employee is involved in planning long or short-term business objectives;

(i)    whether the employee is investigates and resolves matters of significance on behalf of management; and

(j)    whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

Sunoco's evidence does not establish any of these factors as a matter of law.[8]

Sunoco contends that as a pipeline controller, Diller exercised discretion in the significant matters of monitoring and responding to alarms and shutting down the pipeline. Diller responds that he performed his duties as mandated by the strict guidelines of Sunoco's Operations Manual, from which he had no discretion to deviate.[9] Diller further asserts that the Operations Manual dictates a specific response for each and every type of alarm identified in the manual. In the event of an alarm not identified in the manual, Diller was required to consult a supervisor prior to performing a shut down.[10] Diller has testified that he only had authority to shut down

---

[8]    Defendant's most recent response addresses five of these factors (a, b, c, g, and i), citing evidence that for the most part challenges Diller's contrary testimony. This response merely highlights the conflicting evidence to be weighed by the finder of fact at trial.

[9]    Plaintiff's Ex. 1, ¶ 2.

[10]    *Id.* ¶ 3.

the pipeline if the manual required that response, or his supervisor told him to do it.[11]

Sunoco challenges this testimony as "not worthy of credence," but this court is not

at liberty to make credibility determinations on a summary judgment motion.

FLSA regulations make a distinction between an employee who utilizes skill

to implement well-established techniques, procedures or specific standards described

in manuals, and an employee who exercises discretion and independent judgment.

*See* 29 C.F.R. § 541.202 (titled "Discretion and Independent Judgment"); 29 C.F.R.

§ 541.704 (titled "Use of Manuals").   On this summary judgment record, there is

undoubtedly a fact question as to where Diller falls along the skill/discretion

spectrum.[12]

## IV.   CONCLUSION

Because the current record reveals fact issues as to the second and third

elements of the administrative exemption to the FLSA, the court recommends that

Sunoco's motion for summary judgment (Dkt. 58) be denied.

The parties have ten days from service of this Memorandum and

Recommendation to file written objections.   Failure to file timely objections will

---

[11]   *Id.* ¶ 3; Plaintiff's Ex. 5, at 61-62.

[12]   Moreover, Sunoco's evidence consists primarily of a general description of the job duties of a pipeline controller, as opposed to the duties of Diller specifically.   Yet, Sunoco's own witness, Todd DeIuliis, testified that the amount of discretion exercised by controllers in performing their duties varies greatly.   Plaintiff's Ex. 3, ¶ 10.

12

preclude appellate review of factual findings or legal conclusions, except for plain error.  *See* FED. R. CIV. P. 72.

Signed at Houston, Texas on August 9, 2007.


Stephen Wm Smith
United States Magistrate Judge